UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

MONICA MOREAS,

    Plaintiff,

v.

TDSD ENTERPRISES INC., a Florida
corporation, TODD DUNNEIER, an individual,
and SWETA YOMTOB, an individual,

    Defendants.
_____/

## **COMPLAINT**

Plaintiff, Monica Moreas ("Moreas"), through her undersigned attorneys, files this Complaint against the Defendants, TDSD Enterprises Inc., Todd Dunneier, and Sweta Yomtob (hereinafter, "Defendant"), and alleges:

## **JURISDICTION AND VENUE**

1. This suit is brought against the Defendant pursuant to 29 U.S.C. § 201 *et seq.* ("Fair Labor Standards Act" or "FLSA").

2. Jurisdiction is conferred upon this Court by:

    (a)    28 U.S.C. § 1331;

    (b)    28 U.S.C. § 1343; and

    (c)    29 U.S.C. § 216(b), which allows for a FLSA claim to be brought in any court of competent jurisdiction.

3. Venue is proper for the Southern District of Florida because:

(a) Moreas was employed in the Southern District of Florida by the corporate Defendant and the individual Defendants which at all material times conducted, and continue to conduct, business in Broward County; and

(b) Additionally, venue lies because the acts that gave rise to Plaintiff's claims occurred in the Southern District of Florida and because the corporate Defendant keeps an office for the transaction of its customary business in this district (TDSD Enterprises Inc. has an office in South Florida and the individual Defendants reside in the Southern District of Florida).

## CONDITIONS PRECEDENT/ADMINISTRATIVE EXHAUSTION

4. Plaintiff has complied with all conditions precedent in this case, or they have been waived.

## PARTIES

5. Moreas resides within this judicial district.

6. Defendant TDSD Enterprises Inc. is a Florida corporation which, at all times material, conducted substantial and continuous business in this judicial district, and is subject to the laws of the State of Florida and the United States. TDSD Enterprises Inc. owns and operates a business in South Florida at which for all material times Moreas worked for and her labor benefited. The business is a restaurant located in Boca Raton, Florida, and employs at least 15 people, including its 2 owners the individual Defendants who operate it day-to-day and servers, bus staff, cooks, dishwashers, hostesses, and other employees. The workers uses computers, complex point of sale devices, ring up credit card transactions, order food from all over, and advertise their products over the internet to the entire world. The employees use printers, paper, pens, pencils, utensils, and other products that are all manufactured outside the state of Florida.

7. The corporate Defendant paid employees and paid Moreas (through the individual Defendants) and has gross annual sales volume that exceeds $500,000 annually, at least for years

2018-21. The corporate Defendant has two or more employees engaged in commerce, as they have two or more employees who handle, work on, and use goods or materials that have been moved in interstate commerce and/or manufactured outside the state of Florida. For example, in the South Florida location Defendant has at least 15 employees two or more who use computers, computer software, office supplies, copiers which were manufactured outside the State of Florida (and thus have moved in interstate commerce), and use utensils, dishes, and handle food manufactured outside the State of Florida. Further, the Defendant has various employees make long distance phone calls and internet searches (suppliers, internet purchases, and others) and ring up credit card purchases that go across state lines and send emails to individuals who reside out of the State of Florida regularly and recurrently to effectively communicate for the business to operate.

8. Additionally, Moreas is entitled to individual coverage, as she regularly and recurrently participated in the actual movements of goods or services and commerce across state lines. For example, she regularly and recurrently rang up credit card transactions that went across state lines and handles food and other products from out of state. Moreas spoke to customers from all over the world who patronized the restaurant.

9. Individual Defendants Dunneier and Yomtob are high-level managers/owners of the corporate Defendant and operated it day-to-day and have current operational control over the corporate Defendant deciding all financial decisions and having say over numerous employees and directing their work day-to-day, including how much they would be paid and when they would be paid, as the individual Defendants had the power the hire and fire, daily managed the company and were ultimately responsible for the profitability of the business—they terminated Moreas.

9.5. Concerning Moreas, Defendants Dunneier and Yomtob hired her, told her what to do day-to-day, determined how much and whether she would be paid (pay did not include overtime and she was required to work off of the clock), decided to steal her tip money, and fired her (when Moreas

3

was terminated while complaining about the Defendants stealing her tip monies she was told by Defendant Dunneier that she was fired), and Moreas had to follow the individual Defendants' orders.

10. The corporate Defendant is an "employer" pursuant to 29 U.S.C. § 203(d) of the Fair Labor Standards Act, and so too is the individual Defendant.

11. The corporate Defendant is an "enterprise" pursuant to 29 U.S.C. § 203(r) of the Fair Labor Standards Act.

12. The corporate Defendant is an enterprise "engaged in commerce" pursuant to 29 U.S.C. § 203(s) of the Fair Labor Standards Act.  During all times relevant to this action, the corporate Defendant was an enterprise engaged in commerce as defined in 29 U.S.C. §§ 203(r) and 203(s).

13. Moreas was an "employee" pursuant to 29 U.S.C. § 203(e)(1) of the Fair Labor Standards Act.

14. Moreas was a non-exempt employee of Defendant who was subject to the payroll practices and procedures described in Paragraphs 23, 24, and 25 below, and who worked in excess of forty (40) hours during one or more workweeks within three (3) years of the filing of this Complaint. At all times pertinent to this Complaint, Defendant failed to comply with 29 U.S.C. §§ 201-219 in that Moreas performed services for Defendant for which no provision was made to properly pay for those hours in which overtime was required to be paid, which requires the payment of wages at time and one-half for all hours worked in excess of forty (40) hours in each workweek.

**STATEMENT OF FACTS**

15. Within the past three (3) years (March 2019 to March 2021), Moreas worked for the Defendant performing various duties.  Moreas worked under the title "server", which duties included performing manual labor associated with restaurant work and waiting tables (handling credit card orders, point of sale stations, using utensils and handling dishes to do so, preparing and serving

food grown outside of the State of Florida, and plates and other utensils and spices made outside the State of Florida), and her compensation was hourly plus tips.

16. Moreas's duties included doing whatever task the Defendant instructed her to perform, which varied depending the time (but primarily consisted of server duties and other assigned manual labor work to perform).

17. Moreas did not have the ability to hire or fire anyone (nor did she hire or fire anyone), and she did not regularly and customarily direct the work of any employees, much less two or more full-time workers.

18. Moreas was only given tasks that were designed to facilitate production work of the Defendant, such as the tasks described above, all of which consisted of regular, recurrent, and routine work (cooking, cleaning, unloading trucks) that did not involve her exercising independent judgment and discretion on matters of significance.

19. Moreas's primary duties were not management, but were those of a cafeteria worker.

20. During Moreas's employment, Moreas did not have any authority to interview, select, and/or train employees.

20.1. Moreas did not have any authority to set and adjust the rates of pay and hours of work for any employees.

20.2. Moreas had no authority to direct the work of employees.

20.3. Moreas did not maintain production or sales records at all when she worked for the Defendant, nor did she use any such records to supervise or control any employee.

20.4. In fact, Moreas knows little about the business's financing or financial success or failure.

20.5. The finances were not her responsibility.

5

20.6. Moreas did not supervise any staff.

20.7. Moreas had absolutely no say concerning any of the costs.

20.8. For example, concerning wages paid to employees, Moreas had no say concerning what any particular employee would be paid, how many employees could work in the buildings, when, what hours they could work, whether their pay should be increased or decreased, as all of that was determined by the Defendants.

20.9. Moreas had no authority to spend any of the Defendant's money at all, and had no authority to authorize the payment of bills. Moreas never opened up any mail that came to the building for purposes of making any decision concerning the business with respect to that mail.

21. While Moreas worked for the Defendants, she never appraised employees' productivity and/or efficiency for the purpose of recommending promotions or other changes in status.

21.1. While Moreas worked for the Defendants, she never handled employee complaints and grievances, as that was for the Defendants to do.

21.2. Also, Moreas never disciplined employees, nor did she have the power or authority to do that. Moreas did not plan any work for any employee, as there was no work to plan.

21.3. Moreas never determined any techniques to be used by employees to do their job. Moreas never apportioned work among any employees, as there were no employees who reported to her to whom to apportion work.

21.4. Moreas never determined the type of materials, supplies, machinery, equipment, or tools to be used by any employees, as the Defendants or the employees themselves decided all of that.

21.5. Moreas had no involvement in controlling the flow and distribution of materials or merchandise and supplies.  Moreas had nothing whatsoever to do with materials, merchandise, or supplies or their distribution. Moreas had no involvement with respect to budgeting.

21.6. Moreas was not involved in reviewing any sort of financial documents or statements of the buildings, and she did not review any such documents, nor was Moreas supposed to.

21.7. Moreas had no involvement in monitoring or implementing legal compliance measures.

21.8. There were no legal issues that Moreas had anything to do with in terms of deciding how they would be handled or dealt with while she worked for Defendant, nor did she have anything to do with paperwork concerning new employees or hires.

21.9. Moreas simply followed the established techniques and procedures with respect to her duties, all of which were repetitive, routine, and recurrent work.

22. Moreas did not do anything that could have resulted in financial losses for the Defendants.

22.1. Moreas did not perform work that was directly related to management or general business operations of Defendants or their customers, because Moreas did not perform work directly related to assisting with the running or servicing of the business, but rather was engaging in production work (manual labor in the cafeteria and other manual tasks, and work arising out of that, communications with other workers).  Moreas also did not perform work directly related to the management or general business operations of the Defendants because Moreas did not work in a functional area such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government

7

relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

22.2. Rather, Moreas was one more person looking to perform production work the Defendants rely on so heavily, assist with the production work of cooking and serving meals.

23. In the course of employment with Defendant, Moreas worked the number of hours required of her, but were not paid time and one-half for all hours worked in excess of forty (40) during a workweek.

24. Moreas regularly worked in excess of forty (40) hours per workweek, but was not paid for breaks, lunch time though she worked through them and was not completely relieved of duty and was not paid overtime, and was paid off of the books.

24.1. Moreas worked considerable overtime but was not paid it, and she has been made to work off of the clock for cash payments so that Defendants could evade payroll taxes in violation of 26 U.S.C. § 7202.

24.2. David the delivery guy, Eva the dishwasher, and Judy the other waitress were also required to work for cash.

24.3. As an example of the level of control Defendants had over Moreas:  On March 25, 2021, a patron who was being waited on by Ms. Moreas incurred a $16 bill, and left a $50 bill on the table to pay for it.  The $34 was Ms. Moreas's tip, but rather than allow her to keep it, Defendants stole it from her, and said she could not have it, which constitutes a violation of the tip credit section of the FLSA, 29 U.S.C. § 203(m).

24.4. Ms. Moreas merely asked for her tip money and was angrily told that the Defendants are keeping it and she will not get it, and thus the Defendants are not entitled to rely on the tip credit as a defense to her overtime claims.

8

25. The Defendant should have partial accurate records of hours worked, because she filled out the timesheets as indicated above.

26. Moreas has retained the undersigned legal counsel to prosecute this action in her behalf, and has agreed to pay them a reasonable fee for their services.

27. Moreas is entitled to her reasonable attorneys' fees for prosecuting this action, whether or not she is the prevailing party.

## **COUNT I – RECOVERY OF OVERTIME COMPENSATION**

28. Moreas re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 27 above as though fully set forth.

29. Moreas is entitled to be paid time and one-half for each hour worked in excess of forty (40) in each workweek.

30. By reason of the intentional, willful, and unlawful acts of Defendant, Moreas has suffered damages, *e.g.*, back pay for overtime wages, liquidated damages, and compensatory damages, plus incurring costs and reasonable attorneys' fees.

31. As a result of the Defendant's willful violations of the Act, and the failure to pay overtime which was not in good faith, as discussed above, Moreas is entitled to liquidated damages as provided in § 216 of the FLSA, and is entitled to recover damages for three (3) years. Moreas also seeks equitable tolling of the statute of limitations and seeks to go back to 2016 when she started working for the Defendants because the Defendants did not have the required posters displayed informing Moreas of her rights under the FLSA as required by the Department of Labor.

WHEREFORE, for workweeks within six (6) years of the filing of this Complaint (or longer depending upon whether the statute of limitations is equitably tolled), Moreas demands judgment against Defendants for the wages and overtime payments due him for the hours worked by him for which she has not been properly compensated (back pay), liquidated damages, reasonable attorneys'

fees and costs of suit, and for all proper relief including pre-judgment interest (in the alternative to liquidated damages), and any further relief that the Court deems necessary. A presuit demand letter was provided to the Defendants but the Defendants failed to even respond.

## **EMAND FOR TRIAL BY JURY**

Plaintiffs demand trial by jury on all issues and all counts of this Complaint so triable as a matter of right.

Dated: March 10, 2022

                                                              Respectfully submitted,

                                                              By: /s/ *Chris Kleppin*
                                                                  Chris Kleppin
                                                                  Fla. Bar No. 625485
                                                                  ckleppin@gkemploymentlaw.com
                                                                  The Kleppin Firm, P.A.
                                                                  *Attorneys for Plaintiffs*
                                                                  8751 W. Broward Boulevard
                                                                  Suite 105
                                                                  Plantation, FL 33324
                                                                  Tel: (954) 424-1933
                                                                  Fax: (954) 474-7405
                            Secondary E-Mails: assistant@gkemploymentlaw.com